GILBERT C. CARMICHAEL, plaintiff in error, *vs.* GREER, LAKE & COMPANY, defendants in error.

1. A letter saying that the writer is interested in a firm, and requesting his correspondent to sell goods to the firm on time, is evidence to charge the writer, as a member of the firm, for all goods so sold and delivered on the faith of the letter, until notice of dissolution.

2. A retiring partner, to protect himself against responsibility for future purchases by the partnership from a house with whom the partnership has dealt on credit, must give notice of his retirement, and the burthen of proving notice is on him.

3. Credit extended to a firm on the faith of representations by a person that he is interested in the same, will create a debt against him as a partner.

4. The letter relied on in the present case imports, on its face, interest as a partner, and not liability as a guarantor.

5. Representations, not admissions, are the main elements in this case; and refusal to give in charge the law of admissions does not constitute material error.

6. To constitute one a partner as to third persons, it is only necessary that he should hold himself out as such to those trusting the partnership; it is not necessary that he should, in fact, be interested in profits and losses.

7. Where the question is as to the liability of the defendant, as a partner, growing out of credit given on the faith of his representations that he was interested in the firm, it is not error to repel evidence that another member of the firm, in the absence of the former and without his consent, used and signed the firm name in other transactions.

8. The verdict is not contrary to law, or to evidence, or to the charge of the court.

Partnership. Evidence. Notice. Guaranty. Charge of Court. New trial. Before Judge CLARK. Macon Superior Court. December Term, 1874.

Reported in the opinion.

LOYD & GOOD, by brief, for plaintiff in error.

No appearance for defendants.

BLECKLEY, Judge.

This action was complaint for the balance on account for goods sold to J. R. Martin & Company, at various times from November 20th, 1871, to December 24th, 1872. Car-

michael was sued with Martin as a member of the firm.  He pleaded various pleas, among them, that he was not a member of said firm, and never was, and that he gave the plaintiffs notice of that fact in October, 1872.

The main foundation of the plaintiffs' case was a letter from Carmichael to them, dated September 23d, 1871, with these contents: "Mr. J. R. Martin has commenced a small business in his line of confectioneries, fruits, etc.  I have taken an interest with him to help him to start.  He is every way worthy—just asked me to introduce him to some house in Savannah in your line.  I suggested that he could do as well with you or Walker.  If you have them, send him a barrel of nice apples, one to two hundred oranges, the same bananas.  Ship to J. R. Martin & Company, Montezuma.  I will see that the bills are paid promptly."  There was evidence tending to show that all the goods contained in the bills sued upon were sent on the faith of this letter; all the transactions, amounting to over $1,700 00, and the payments received from time to time being in the aggregate $1,245 00, leaving a balance still due of $461 00.  Certain admissions of Carmichael were in evidence, made in January, 1873, to the effect that he was a partner up to June or July, 1872, coupled with the assertion by him that the firm was then dissolved, and that he had given notice of the dissolution to the plaintiffs by letter.  He, in his own testimony, denied that he ever was a member of the firm.  He also testified that he instructed his book-keeper to give notice of this fact to the plaintiffs; and the book keeper testified that he gave such notice to one of the plaintiffs, on the 8th of October, 1872, and stated to him distinctly that Carmichael would not be liable for any goods purchased by Martin.  One of the plaintiffs testified that the letter which Carmichael alleged was sent, giving notice of dissolution, was never received; and the one to whom the book-keeper stated he gave notice, denied the fact, and testified that the notice given was that Carmichael intended to withdraw from the firm, but no statement that he had with-

drawn, or was not a member, ever reached him until after all the account was created.

1, 2, 3. The court, in charging the jury, laid down as law, substantially, the propositions contained in the first three headnotes to this opinion, all of which we indorse as correct.

4. The court refused to charge, on the request of Carmichael's counsel, that the letter herein before quoted was not proof of a partnership, but amounted only to a guaranty. This refusal was, also, correct.

5. The court refused to charge, on the like request, the usual disparaging rule of law as to the slight worth of admissions, and the ordinary cautionary admonition as to receiving them. The great strength of this case lies in the representations made in Carmichael's letter as to his being interested with Martin ; and these common places touching admissions are not applicable to that document. The request of the counsel seems to mix the contents of the letter with what may have been said orally, and on that account is objectionable. Besides, if the request was legal throughout, the refusal to give it in charge is not of such importance, under all the facts of this case, as to amount to material error. After all the discount to which admissions are subject, there is still quite enough force left in the evidence to warrant the verdict.

6. The defendant requested a charge to the effect that a joint interest in the profits and losses was requisite to constitute a partnership, and this was refused. Rightfully, no doubt, for, in facing the representations contained in his letter, on the faith of which credit was extended to the firm, the defendant is not looking inward towards his associate, but outward towards a creditor who has been induced to act by the defendant's assumed *status,* whether it be his real one or not. In such circumstances, it is altogether immaterial what may be his relation to profits and losses. The question is, shall he abide by the relation which he has voluntarily assumed towards his creditor ?

7. It is complained that the court repelled testimony offered to show that Martin, during Carmichael's absence, and

without his knowledge or consent, signed and used the firm name in other transactions. Surely this was not error. There was no evidence of knowledge on the part of the plaintiffs to make such testimony relevant.

8. The last ground of the motion for new trial is, that the verdict is contrary to law, to evidence and to the charge of the court.

These points of conflict seem to us altogether imaginary. The verdict harmonizes very well with all three. In fact, it is just such a verdict as we like to see in such a case.

Judgment affirmed.