## HAND TRADING COMPANY *v.* JONES.

129  853
f130  273

Where several persons engage in a commercial enterprise under a firm name, each contributing his credit and services to the business, upon an agreement to divide net profits, all of such persons would be liable as partners upon a promissory note, executed with due authority, in payment for goods sold to the firm.

Submitted July 2, 1907.—Decided February 3, 1908.

Complaint. Before Judge Parker. Grady superior court. September 3, 1906.

*Donalson & Donalson,* for plaintiff.

*R. R. Terrell,* for defendant.

ATKINSON, J. Suit was instituted on a promissory note against T. H. Swicord, S. P. Swicord, and N. F. Jones, doing business under the firm name of "T. H. Swicord & Brother and N. F. Jones." The alleged cause of action was a balance due upon a promissory note, given for goods sold to the firm. The firm was a mercantile concern engaged in buying and selling guano. The defendant, N. F. Jones, filed a plea denying that he was a member of the firm. Before the trial, T. H. Swicord and S. P. Swicord, having been adjudged bankrupts, were, by consent of counsel for Jones, stricken as parties, and the case proceeded against Jones alone. On the trial the plaintiff introduced the note and examined as witnesses S. P. Swicord and the defendant, Jones. Swicord, among other things, testified that Jones "was to receive nothing until the guano was paid for. In the fall, if there was any profit, he was to receive half. He was to share half for his labor in it. I think we bought the fertilizer from these people like we did all the rest of it, in T. H. Swicord & Brother's name. I don't think Mr. Jones was known in it at the time we bought it. . . When I signed the note and contract, it was for the purpose of binding Mr. Jones so far as the profits went, and no further. . . I think that he knew that we had entered into a contract about the guano. I think I added the name of N. F. Jones to strengthen the note. Mr. Jones knew that I was doing that. I had authority to sign the contract. When I signed the note, if he was a partner, he was a partner at that time. . . I expected him to pay a part of the note so far as his half of the profits went. We expected to collect it and pay it. . . There was no

agreement with Mr. Jones, when we all entered into this firm, that he was not to share any of the loss. A thing of that kind was never mentioned. We simply entered into a firm to buy and sell guano." Jones testified: "I worked with Mr. Swicord in 1901. I had no interest in the firm at all unless there was some profits. After the expenses were paid and the goods were paid for, if there were any profits left, I shared in them. If there were none, I got none. . . I don't know that I really know what Mr. Swicord's authority was as manager of the firm of T. H. Swicord & Brother and N. F. Jones. He had authority to sign this note, as far as my profits were concerned. . . I had a working interest. After the goods were paid for and the expenses all paid, if there was any profit derived from the sale of the guano I was to share in it. If there was no profit after paying for the goods and paying expenses, I was to get nothing. . . I was to get either one half or one third of the profits, I don't remember. I worked at the warehouse, unloaded the goods, delivered guano, delivered it to the parties buying it, loaded it on the wagons, and did a lot of other things. I was not to be responsible for any of the loss we had according to our agreement. . . I don't know that I did have any agreement with T. H. Swicord & Brother when I entered the firm, that, in the event there were losses, I was not to be responsible for any of the losses. I don't remember any agreement of that kind." Upon the theory that Jones was not shown to be a partner, the court granted a nonsuit. Error is assigned upon this ruling.

1. It will be observed that this was a mercantile concern which contemplated the buying and selling of goods with a view of obtaining profits to be derived therefrom. It does not appear affirmatively that any of the parties had any capital to begin with. It does affirmatively appear that there was no agreement that Jones should not share the losses in the event of failure. But it was insisted that Jones had only a working interest, which did not amount to an interest in the firm property. So far as the record discloses, the entire business may have been conducted on a credit basis, without an original investment of other capital. The execution of the note sued upon seems to be in pursuance and illustrative of the general plan of conducting the firm business. It was conceded by Jones that Swicord had the right to sign the

firm name to the note, and bind him therefor, so far as his share of the profits was concerned. It is also conceded by Jones that he was not to be paid any fixed and certain sum, but that his remuneration should depend entirely upon whether there were any profits after paying all the debts of the concern. In the event of profits, after paying the debts, he was to receive such a per cent. as one half of the profits would be. In *Dawson National Bank* v. *Ward,* 120 *Ga.* 861, Mr. Justice Evans, speaking for the court, said (p. 863): "If the party's interest is that of owner; if he has a right to dispose of and control the profits of the enterprise as profits, then there is a partnership. Where, however, a party makes no contribution to the capital stock of the concern, nor has any right to control the profits, but only is to receive a certain proportion of the net profits in compensation for his labor, the partnership relation does not exist." In the case at bar, as already pointed out, the record does not disclose that the partnership had any capital stock other than the credit of the several members thereof. The concession by Jones that Swicord was authorized to bind him as party to the note, to the extent of his profits in the concern, in anticipation of profits to be derived, conceded that, in anticipation of such profits, he had contributed his credit to the capital stock of the company. This necessarily gave him an interest in the capital stock of the concern, and would entitle him to participate with the other members in the control and disposition of the profits of the enterprise. In addition to his credit, Jones contributed labor. This was probably no more than the contribution made by the other members of the firm. They all contributed services connected with the business and their credit. So far as the record discloses, the interest of one can not be distinguished from that of the other. Of course, if no profits were made, no member of the firm would receive anything; but if any profits were made, all would participate in certain proportions. There was no agreement that, in the event of losses, Jones should not be responsible for such losses. It is affirmatively shown that nothing was said upon that subject. The rule announced by Mr. Justice Evans serves to illustrate that, under the facts in this case, a partnership existed. A different result was obtained in the case of *Dawson National Bank* v. *Ward,* supra, but that was because the facts under consideration were different from those

now involved. We do not deem it necessary to go into a further discussion and cite further cases, where, under particular facts, a partnership has been held to exist or not to exist; but, in connection with what has been said, we may, as referring to the subject generally, call attention to the case of *Callaway* v. *Waxelbaum Co.,* 128 *Ga.* 508, and cases therein cited, including, among others, the case of *Brandon* v. *Connor,* 117 *Ga.* 759, and cit.

*Judgment reversed. All the Justices concur, except Holden, J., who did not preside.*